Eastern District of Kentucky
F I L E D

FEB 2 7 2020

AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

ARNOLD RAY ANDERSON, JR.,          )
                                   )
          Plaintiff,               )          Civil No. 0:18-115-HRW
                                   )
v.                                 )
                                   )
MICHAEL WORTHINGTON, et al.,       )          **MEMORANDUM OPINION**
                                   )          **AND ORDER**
          Defendants.              )
                                   )
                                   )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Proceeding without counsel, Arnold Ray Anderson, Jr., has filed a civil rights

complaint against prison officials pursuant to 42 U.S.C. § 1983. [D.E. No. 1][1]

Because Anderson has been granted permission to proceed *in forma pauperis* [D.E.

No. 13] and because he asserts claims against government officials, the Court must

conduct a preliminary review of Anderson's complaint pursuant to 28 U.S.C.

---

[1] Anderson previously voluntarily dismissed this case without prejudice "to allow
[him] time to discover names of all of the defendants and to add [an] additional
claim." [D.E. No. 17, 18] However, Anderson's subsequently moved to reinstate
his complaint [D.E. No. 19], explaining that he has been unable to learn the names
of the unidentified defendants. The Court construed Anderson's motion as a motion
seeking relief from a judgment or order pursuant to Federal Rule of Civil Procedure
60(b), granted the motion, and re-opened this proceeding. [D.E. No. 20] However,
for clarification, Anderson has not filed a new complaint, thus his original complaint
[D.E. No. 1] remains the operative pleading in this action.

1

§§ 1915(e)(2), 1915A. A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997), *abrogated on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

## I.

Anderson's complaint begins by alleging that, on November 5, 2018, while he was incarcerated at the Greenup County Detention Center ("GCDC"), Kevin Black gave him his legal mail (which included a court order regarding a different civil rights case that Anderson had filed against Greenup County) and it appeared that someone had gone through his mail. He then alleges that, later that day, Defendant S. Palmer told Anderson to pack up his stuff because he was being transported to another jail. Anderson claims that Palmer was given orders by Defendants Greenup County Jailer Michael Worthington and Greenup County Jail Administrator Shannon Worthington to deliver Anderson to the Boyd County Detention Center ("BCDC"), which he alleges was in retaliation for Anderson's lawsuit against Greenup County. Anderson alleges that the BDCD "has been the epicenter of controversy on the news it portrays the violence, assaults, deaths, murders, of inmates" and that Michael and Shannon Worthington were aware of these conditions. According to Anderson, he could have been transferred to the

2

Carter County Detention Center, where Anderson would have had access to a law library, but Palmer, Michael Worthington, and Shannon Worthington chose to send him to the BCDC instead.

Relatedly, Anderson alleges that BCDC Jailer Joe Burchett acted with deliberate indifference to Anderson's health and safety by even agreeing to accept Anderson from the GCDC. Anderson also makes a variety of allegations regarding the inadequate conditions at BCDC, including that when Anderson was booked into the BCDC, he was given only a 1-inch mat and a dirty blanket (but no towel and shoes) and "crammed into a 10-man cell Cellblock C, where he was subjected to inhumane conditions, broken shower, and slept on the floor" for five days.

The remainder of Anderson's allegations refer to specific events that occurred while he was housed at the BCDC from November 5, 2018 through November 14, 2018. Anderson alleges that, on November 10, 2018, he and three other inmates were informed that they were being moved to Cell Block B, at which time they told Defendant Muex[2] that they feared for their safety due to recent gang attacks in Cell

---

[2] The identity of this Defendant is unclear from Anderson's complaint. Anderson first identifies this Defendant as "Richard Muex ('Hightower') not sure." [D.E. No. 1 at p. 2] He then identifies as a Defendant "Boyd County Deputy Richard Mutz 'Hightower' (Mutz Hightower)." [D.E. No. 1 at p. 3] In the body of his complaint, Anderson's references to "Hightower" are marked through and the name "Muex" is written beside them. [D.E. No. 1 at p. 5, 6, 7] For clarification, the Court will refer to this Defendant as "Muex," as this appears to be the name that Anderson eventually settles on in his complaint.

3

Block B. Anderson states that they were placed in Cell Block B anyway and, within minutes, one of the other inmates was attacked by one of four gang members. Muex then came in and did a quick scan of the inmates' knuckles but left without taking any action. Anderson claims that within 10 minutes, he was attacked and severely beaten by 5 gang members. He states that Muex then came into the cell and removed Anderson and placed him in Cell C. Anderson states that, while he was being placed in Cell C, he requested medical attention because his left ear was leaking blood and his eyes were swollen shut, but Muex shut the door behind him. Anderson states that he then became dizzy and fell, hitting concrete which rendered him unconscious. Paramedics were then brought into Cellblock C, removed Anderson and took him to King's Daughters Medical Center for treatment. Although Anderson had severe swelling and deep cuts, no fractures were discovered. He states that, while he was in the Emergency Room, he asked Muex to contact the Kentucky State Police, but Muex did not. Anderson returned to the BCDC and was placed back into Cellblock C.

Anderson alleges that, on November 11, 2018, he complained to Defendant Nurse Jane Doe 1 about severe pain, headaches, blurred vision and ringing in his head and was given Motrin. That same day, he later pushed the button inside his cell to request another Motrin, but was denied his request by two Doe deputies, who indicated that a nurse was not available.

4

Anderson states that he "wrote grievances on the KIOSK machine inside Cell C" the next day, although he does not indicate the subject matter of these grievances. He alleges that they were denied by defendant Richey and the denial stated only "OK."

Anderson then alleges that he told John Doe 3 that he wanted to file charges related to the November 10 attack on him by other inmates, and Doe 3 responded, "Careful what you wish for." Anderson states that, on November 13, 2018, he gave a full report regarding the attack, the actions of the guards, and the jail conditions to a Kentucky State Police Officer. Anderson then alleges that, that same day, he witnessed an unidentified Sargent threaten another inmate with a strobe flashlight, eventually inducing a seizure in the other inmate with the flashlight. He states that he called his family and requested that they report the incident to the Kentucky State Police. Anderson also reported the incident on the KIOSK via an "inmate request" form.

Anderson alleges that, on November 14, he checked his sick call response in hopes of a follow-up visit with King's Daughters, but there was no response. He states that, shortly thereafter (also on November 14) Defendants Richey and Layne came into Cell Block C and, in an "aggressive way," told Anderson to pack his things. Anderson claims that he recognized Richey and Layne as being officers that another inmate claimed had beaten him on November 8 and that Anderson had

5

helped that inmate file a grievance about the incident. Anderson states he told another inmate to call the Kentucky State Police and let them know he was being removed from his cell. According to Anderson, he was told by Richey and Layne that he was being moved into Protective Custody and Richey stated, "I'm tired of seeing your grievances go across my desk." Anderson states that he was then picked up by Shannon Worthington and transported to the Carter County Detention Center. Anderson claims that, although he informed Worthington that he needed follow-up treatment with King's Daughters, he was delivered to the Carter County Detention Center with no medication, that no paperwork was given to the deputies and he was denied follow-up care. He claims that he suffered severe injury to his body, arms, legs and head and he presently suffers from earaches, blurred vision, nightmares, anxiety, emotional distress and mental anguish.

Based on these allegations, Anderson alleges that his rights under the First, Eighth, and Fourteenth Amendment have been violated. [D.E. No. 1 at p. 5] He also refers to "interference with civil rights" and "failure to maintain a safe jail." [*Id.*] With respect to his Eighth Amendment claims, Anderson specifies that the Defendants acted with "deliberate indifference" to a substantial risk of harm to Anderson as a result of the inadequate and dangerous prison conditions at the BCDC, including overcrowding, understaffing, "failure to classify non-violent inmates from violent inmates," and inadequate supervision of inmates and inmate disciplinary

6

procedures. He claims that, when he was placed in Cell Block B, several inmates had already been assaulted by the "gang member" inmates there, thus his placement there was in deliberate indifference to his health and safety. He also alleges that the Defendants acted with deliberate indifference to his serious medical needs by providing him with inadequate medical care after he was attacked.

## II.

The Court evaluates Anderson's complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the plaintiff's factual allegations as true, and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). However, the principles requiring generous construction of *pro se* pleadings are not without limits. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Wilson v. Lexington Fayette Urban County Government*, No. 07-cv-95-KSF, 2007 WL 1136743 (E.D. Ky. April 16, 2007). A complaint must set forth claims in a clear and concise manner, and must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). *See also* Fed. R. Civ. P. 8. In addition, "a plaintiff's obligation to provide the 'grounds' of his

7

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555.

Moreover, although the Court has an obligation to liberally construe a complaint filed by a person proceeding without counsel, that obligation does not extend so far as to require or permit it to create arguments or claims that the plaintiff has not made. *Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003) ("Pro se parties must still brief the issues advanced with some effort at developed argumentation."). Thus, vague allegations that one or more of the defendants acted wrongfully or violated the plaintiff's constitutional rights are not sufficient. *Laster v. Pramstaller*, No. 08-CV-10898, 2008 WL 1901250, at \*2 (E.D. Mich. April 25, 2008). The Court is not required to create a claim for the plaintiff, nor to "conjure up unpled allegations." *Moorman v. Herrington*, No. CIV A 4:08-CV-P127-M, 2009 WL 2020669, at \*1 (W.D. Ky. July 9, 2009)(citations omitted).

Anderson seeks to bring his claims against the Defendants pursuant to 42 U.S.C. § 1983. Personal liability in a § 1983 action hinges upon the defendant official's personal involvement in the deprivation of the plaintiff's civil rights. *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003); *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981). Accordingly, federal notice pleading requires, at a minimum, that the complaint advise each defendant of what he allegedly did or did not do that forms the basis of the plaintiff's claim against

8

him. *Iqbal*, 556 U.S. at 678; *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008). To be sure, "[p]laintiff must state a plausible constitutional violation against each individual defendant—the collective acts of defendants cannot be ascribed to each individual defendant," *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012) (citations omitted). Indeed, "[e]ven a pro se prisoner must link his allegations to material facts...and indicate what each defendant did to violate his rights..." *Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) (citing *Hill*, 630 F.3d at 471); *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).

For these reasons, Anderson's repeated attempts to attribute conduct to "Defendants" broadly as a group is insufficient. Rather, to state a claim for relief against any particular Defendant, Anderson must: 1) allege the violation of a constitutional right; 2) link his allegations to material facts; and 3) indicate what each individual defendant against whom he asserts a particular claim did to violate his constitutional rights.

## A. "Official Capacity" Claims

First, to the extent that Anderson seeks to bring his claims against each Defendant in their respective "official" capacities, these claims must be dismissed for failure to state a claim for which relief may be granted. An "official capacity" claim against a government official is not a claim against the officer arising out of his conduct as an employee of the government but is actually a claim directly against

9

the governmental agency which employs him. *Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008); *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("While personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law, individuals sued in their official capacities stand in the shoes of the entity they represent.") (internal quotation marks omitted). Thus, to the extent that Anderson seeks to bring claims against Defendants in their "official" capacities as employees of either Boyd County or Greenup County, such claims are construed as civil rights claims against those counties.

However, while Anderson claims that the actions of Defendants were wrongful and that the Defendants acted "under color of law," he does not assert that these actions were taken pursuant to an established policy of either Boyd County or Greenup County. Because a county government is only responsible under § 1983 when its employees cause injury by carrying out the county's formal policies or practices, *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978), a plaintiff must specify the county policy or custom which he alleges caused his injury. *Paige v. Coyner*, 614 F.3d 273, 284 (6th Cir. 2010). Anderson points to no such policy in his complaint, and these claims are therefore subject to dismissal for failure to state a claim. *Id.*; *Bright v. Gallia County, Ohio*, 753 F. 3d 639, 660 (6th Cir. 2014) ("To establish municipal liability pursuant to § 1983, a plaintiff must allege an unconstitutional action that 'implements or executes a policy statement, ordinance,

**10**

regulation, or decision officially adopted and promulgated by that body's officers' or a 'constitutional deprivation [] visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels.'"); *Brown v. Cuyahoga County, Ohio*, 517 F. App'x 431, 436 (6th Cir. 2013). Thus, Anderson's "official capacity" claims will be dismissed.

## B.     Anderson's Fourteenth Amendment Claims

Anderson's complaint appears to invoke three provisions of the United States Constitution – the First Amendment (retaliation and interference with his "civil rights"), the Eighth Amendment (inadequate prison conditions, failure to protect, and deliberate indifference to his personal safety and serious medical needs), and the Fourteenth Amendment. However, the factual basis for his Fourteenth Amendment claim is unclear. To the extent that his allegations regarding his transfer from the GCDC to the BCDC could be construed to allege a due process violation as a result of his transfer to a different prison, an inmate has no liberty interest in being placed in any particular penal institution, *Olim v. Wakinekona*, 461 U.S. 238, 247 (1983), or classified at any particular security level, *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995), and hence no rights protected by the Due Process Clause in that regard. *Sandin*, 515 U.S. at 484-86. *See also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("... the Constitution itself does not give rise to a liberty interest in avoiding

11

transfer to more adverse conditions of confinement.") (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003).

Anderson makes no other allegations which may be construed to allege a violation of the Fourteenth Amendment, such as allegations otherwise suggesting a denial of due process of law and/or equal protection of the law. Rather, Anderson's retaliation and "deliberate indifference" claims clearly implicate his rights under the First and Eighth Amendments. The Supreme Court has expressly held that where a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the broad rubric of substantive due process. *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."). Thus, although Anderson references the due process clause of the Fourteenth Amendment, the First Amendment is the proper vehicle to assert his retaliation claims and the Eighth Amendment is the proper vehicle to assert Anderson's "deliberate indifference" claims. *See Cooleen v. Lamanna*, 248 F. App'x 357, 362 (3rd Cir. 2007) (viability of claim under Eighth Amendment to

12

challenge medical care of prisoner forecloses availability of substantive due process claim). For these reasons, Anderson's Fourteenth Amendment claims will be dismissed.

## C. Anderson's First Amendment Claims

Although Anderson's complaint is not entirely clear, it appears that his First Amendment claims are based upon his allegations that the GCDC officials (S. Palmer, Michael Worthington, and Shannon Worthington) transferred him to the BCDC in retaliation for a different civil rights case that he filed against Greenup County. To establish a claim of First Amendment retaliation, "a prisoner must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill*, 630 F.3d at 472 (quoting *Thaddeus–X v. Blatter,* 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)). Although retaliation can rarely be supported by direct evidence of the required intent, "conclusory allegations of retaliatory motive unsupported by material facts" are not sufficient to state a claim. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citations and quotation marks omitted). To establish causation, the plaintiff must set forth "a chronology of events from which retaliation may plausibly be inferred." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).

13

Here, the only fact that Anderson has pled supporting an inference that his transfer from the GCDC to the BCDC was retaliatory is that he believes that someone went through his mail containing a Court Order related to Anderson's lawsuit against Greenup County the same day that Anderson was transferred to the BCDC. [D.E. No. 1 at p. 2, 4] However, "[a] pure temporal relationship (A occurred after B) is not enough to establish a causal connection." *Coulson v. The Goodyear Tire & Rubber Co.*, 31 Fed. App'x 851, 859 (6th Cir. 2002). *See also Vaughn v. Robb*, 2012 WL 769481 at *4 (W.D. Mich. 2012). Anderson alleges no other facts that would support a finding that his transfer to the BCDC was motivated by the discovery of a Court Order related to his other lawsuit against Greenup County by someone at the GCDC. Therefore, Anderson fails to state a claim for First Amendment retaliation because he does not alleged facts sufficient to support a reasonable inference of a causal connection between his filing of a complaint against Greenup County and his transfer to the BCDC.

To the extent that Anderson broadly claims that "Defendants" interfered with his civil rights, it is unclear if he seeks to bring a First Amendment claim based on an allegation of interference with his access to the Courts. Although Anderson does complain that he was transferred to the BCDC rather than the Carter County Detention Center (where he states would have had access to a law library), he does

14

not make any allegation even suggesting that he was transferred to the BCDC in order to deny him access to the law library.

Although it is doubtful that this fleeting reference to the presence of a law library at the Carter County Detention Center is sufficient to construe Anderson's allegations as attempting to assert a First Amendment claim based on the interference with his access to the Courts, even it were, his allegations would still be insufficient to state a claim. To state a claim for denial of access to the courts, a plaintiff must show actual injury to a nonfrivolous legal claim. *Lewis*, 518 U.S. at 353-55 (1996). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). *See also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) ("Plaintiffs must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim."). Here, Anderson does not describe any particular legal claim that he was hindered or prevented from asserting because of his transfer from the GCDC to the BCDC, thus he fails to adequately allege an access-to-courts claim. *Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011) (adequate pleading of access-to-courts claim requires allegation of actual injury to specific claim, allegation of the facts and the law in the

15

underlying claim, and demonstration that underlying claim was non-frivolous) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)); *Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011).

For all of these reasons, Anderson's First Amendment claims will be dismissed.

## D. Anderson's Eighth Amendment Claims

The Eighth Amendment prohibits any punishment which violates civilized standards of decency or "involve[s] the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotation marks and citation omitted). While the Constitution "does not mandate comfortable prisons," the Eighth Amendment requires prison officials to provide inmates with humane conditions of confinement, including "adequate food, clothing, shelter, and medical care, and...'reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment violation, a prisoner must demonstrate that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, (1981); *Wilson v. Seiter*, 501 U.S. 294 (1991) (an Eighth Amendment claim is stated where a prisoner is denied some element of civilized human existence due to deliberate indifference or wantonness); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). However, "[e]xtreme deprivations are required to make out a conditions-of-

confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987).

An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298. Thus, to state a viable Eighth Amendment claim, an inmate must allege that a prison official: 1) was actually aware of a substantial risk that the plaintiff would suffer serious harm; and 2) knowingly disregarded that risk. *Farmer*, 511 U.S. at 837.

After reviewing the allegations of Anderson's complaint, the Court finds that Anderson's Eighth Amendment claims against Defendant Muex require a response from Defendant Muex before this matter may be litigated further. This includes Anderson's "failure to protect" claim based on his allegations regarding Anderson's placement in Cell Block B on November 10, 2018, including that Muex left Anderson in Cell Block B even after another inmate was attacked. This also includes Andersons' claim based on his allegations that Muex acted with deliberate indifference to Anderson's serious medical needs by placing him in Cell C, notwithstanding Anderson's need for immediate medical care for his injuries suffered in the attack. However, Anderson's remaining Eighth Amendment claims

17

against Defendants Michael Worthington, Shannon Worthington, S. Palmer, Joe Burchett, Deputy Chandler, Deputy Layne, Deputy Ritchie, John Doe Deputies 1-10 and Jane Doe Nurses 1-2 must be dismissed for failure to state a claim for which relief may be granted.

First, Anderson's Eighth Amendment claims against Greenup County Jailer Michael Worthington, Greenup County Administrator Shannon Worthington, and Greenup County Deputy S. Palmer are based upon Anderson's theory that the very fact that he was transferred to BCDC at all (a facility that Anderson labels as "an epicenter of controversy on the news") constitutes deliberate indifference to Anderson's health and safety. Similarly, his Eighth Amendment claim against Boyd County Jailer Burchett is based upon his theory that his agreement to house Anderson for Greenup County was, in and of itself, deliberately indifferent to Anderson's health and safety needs. [D.E. No. 1 at p. 3-4]

However, the Supreme Court has instructed that:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837 (citations omitted).

Thus, to state a viable claim for failure to protect, an inmate must allege that a prison official: 1) was actually aware of a substantial risk that the plaintiff would suffer serious harm; and 2) knowingly disregarded that risk. *Id.* Anderson's claim that M. Worthington, S. Worthington, Palmer, and Burchett should have known that transferring Anderson to BCDC presented an excessive risk to Anderson's health and safety because of the generally bad reputation of the BCDC as portrayed on the news simply does not rise to this standard. In short, Anderson fails to allege that any of these Defendants were *actually* aware of a substantial risk of serious harm to Anderson resulting from a transfer to BCDC, nor that any of these Defendants knowingly disregarding that risk.

Next, to the extent that Anderson seeks to pursue an Eighth Amendment claim based upon his allegations of inadequate prison conditions (for example, his allegations that the BCDC was overcrowded, he was given a 1-inch mat and dirty blanket and slept on the floor for five days, and there was a broken shower [*see* D.E. No. 1 at p. 4]), he fails to identify any particular prison official against whom he seeks to assert such a claim. "[T]o prevail under the subjective component [of an Eighth Amendment claim], a prisoner must allege specific incidents of deliberate indifference by prison officials." *Talal v. White*, 403 F.3d 423, 427 (6th Cir. 2005) (citations omitted).

19

At one point in his complaint, Anderson suggests that Jailer Joe Burchett should be held responsible because he "acted and continue[s] to act as the final policy making official of...Boyd Count[y] for those aspects of jails operation under [his] control." [D.E. No. 1 at p. 12] However, under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). A plaintiff must "plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676. Thus, for a supervisor to be held liable under § 1983, he or she must have personal involvement in the alleged unconstitutional conduct in order to be held liable for the conduct about which the plaintiff complains. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The mere fact that a defendant acted in a supervisory capacity is not enough: *respondeat superior* (vicarious liability) is not an available theory of liability in a § 1983 action. *Polk County*, 454 U.S. at 325-26.

In addition to failing to adequately identify a potential Defendant, to the extent that Anderson alleges that the BCDC is overcrowded, his allegations are insufficient to state a claim for a violation of the Eighth Amendment. Because "[h]arsh and uncomfortable prison conditions do not automatically create an Eighth Amendment violation..., 'extreme deprivations' must be alleged in order to support a prison-

overcrowding claim." *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012)(quoting *Hudson,* 503 U.S. at 9). Indeed, "overcrowding is not, in itself, a constitutional violation," particularly where, as here, there are no allegations that the allegedly overcrowded conditions resulted in an unconstitutional denial of such basic needs as food, shelter, or sanitation. *Agramonte*, 491 F. App'x at 560 (citations omitted).

Next, Anderson implies that he wishes to bring an Eighth Amendment claim based upon his allegations that BCDC Deputy Ritchie denied Anderson's grievances. [D.E. No. 1 at p. 9] In addition, Anderson alleges that, on November 14, 2018 (the day that Anderson was transferred from BCDC to the Carter County Detention Center), Defendants Richey and Layne entered Cell Block C, told Anderson to pack his things in an "aggressive way," and, after informing Anderson that he was being moved to Protective Custody, Richey commented that he was "tired" of seeing Anderson's grievances go across his desk. [D.E. No. 1 at p. 9-10] Finally, Anderson alleges that, at one point, he told John Doe 3 that he wanted to file charges related to the attack on him and the robbery of his commissary shoes by five gang members on November 10, 2018, and Doe 3 stated "Careful what you wish for." [D.E. No. 1 at p. 8]

However, to the extent that Anderson's claims are based on his allegation that Ritchie (or any other Defendant) failed to adequately respond to his complaints or

21

grievances, prison officials are not liable under § 1983 for denying or failing to act on grievances. *Grinter v. Knight,* 532 F.3d 567, 576 (6th Cir. 2008). *See also Nwaebo*, 100 F. App'x at 369 (citing *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999)). In addition, to the extent that Anderson claims that Richey and Layne told him to pack his things in an "aggressive way," or that John Doe 3's statement to be "careful what you wish for" was threatening, it is well-established that verbal abuse or general harassment by a prison guard does not constitute cruel and unusual punishment in violation of the Eighth Amendment. *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding harassment and verbal abuse, while "shameful and utterly unprofessional ... [they] do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Ivey*, 832 F.2d at 955.

Anderson's complaint also refers to incidents involving other inmates and John Doe 4, Richey and Layne, alleging that Anderson either witnessed or heard from other inmates that these prison officials assaulted other inmates. [D.E. No. 1 at p. 8-10] Although it is not clear if Anderson seeks to pursue an Eighth Amendment claim against Doe 4, Richey, and/or Layne based upon these allegations, to the extent that he does, this simply is not his claim to bring. Pursuant

to 28 U.S.C. § 1654, "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654. However, the United States Court of Appeals for the Sixth Circuit has consistently interpreted § 1654 "as prohibiting pro se litigations from trying to assert the rights of others." *Olagues v. Timken*, 908 F.3d 200 (6th Cir. 2018) (collecting cases). *See also Crawford v. United States Dep't of Treasury,* 868 F.3d 438, 455 (6th Cir. 2017) ("Generally, a plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Because Anderson may only pursue claims in this case made on his own behalf, to the extent that he seeks to assert claims based on alleged violations to the constitutional rights of other inmates, those claims must be dismissed.

Turning to Anderson's Eighth Amendment claims based on his allegations of deliberate indifference to his serious medical needs, other than Defendant Muex, the Defendants against whom he seeks to pursue these claims is not entirely clear. Construing Anderson's complaint as broadly as possible, the only other Defendants against whom he makes any allegations in connection with Anderson's medical needs are Nurse Jane Doe, BCDC Deputy John Does 1 and 2, and GCDC Jail Administrator Shannon Worthington. The remainder of his allegations claim that "Defendants" were deliberately indifferent to his medical needs, without making any

effort to specify what any particular Defendant allegedly did or did not do that would support such a claim against them. As noted previously, a plaintiff must, at a minimum, advise each defendant of his or her alleged actions or inactions giving rise to the plaintiff's claims, *Iqbal*, 556 U.S. at 678; *Grinter*, 532 F.3d at 577, and "the collective acts of defendants cannot be ascribed to each individual defendant." *Reilly*, 680 F.3d at 626. Thus, to the extent that Anderson's claims is based on his general, conclusory allegations that "Defendants" collectively violated his Eighth Amendment rights, these allegations are insufficient to state a claim for an Eighth Amendment violation.

"In order to state a cognizable claim [under the Eighth Amendment] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Estelle*, 429 U.S. at 106. Even assuming that Anderson sufficiently alleges that his medical needs were serious, to establish "deliberate indifference" to Anderson's condition, Anderson must allege facts sufficient to show that each Defendant was aware of Adams' medical condition yet, through his or her actions, chose to consciously and deliberately disregard a serious risk to Adams' health, a much more demanding standard. *Farmer*, 511 U.S. at 834; *Arnett v. Webster*, 658 F. 3d 742, 751 (7th Cir. 2011) ("Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.'") (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)). Indeed,

"the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish." *Horn by Parks v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).

With respect to Anderson's claim against Nurse Doe, at most, Anderson alleges that, on November 11, 2018, he complained to her of severe pain, headaches, blurred vision, and ringing in his head, which she treated with providing him with Motrin. [D.E. No. 1 at p. 7] Anderson does not allege that this treatment was improper, unsatisfactory, or that it did not address his medical needs at that time. However, even he was dissatisfied with this treatment, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). *See also Durham v. Nu'Man*, 97 F. 3d 862, 868-69 (6th Cir. 1996). Even "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). At most, Anderson's allegations against Nurse Does amounts to a dispute regarding the level of care that

he received. However, Anderson's mere disagreement with his course of care is insufficient to state a claim against Nurse Doe for violation of his Eighth Amendment rights.

Anderson also alleges that, after Nurse Doe gave him a Motrin on November 11, 2018, he later pushed the button inside his cell to request another Motrin, but was denied his request by BCDC Deputy John Does 1 and 2, who indicated that a nurse was not available. [*Id.*] He further states that, on the morning of November 14, 2018, he "checked his sick call response in hopes of his follow-visit with Kings Daughters, no response." [D.E. No. 1 at p. 9] He then alleges that, later that day, Greenup County Jail Administrator Shannon Worthington picked Anderson up at the BCDC and transported him to the Carter County Detention Center. [D.E. No. 1 at p. 10] He alleges that, although Anderson informed Worthington that he needed follow-up treatment with King's Daughters, he was delivered to the Carter County Detention Center with no medication, that no paperwork was given to the deputies and he was denied follow-up care.

However, neither the BCDC Doe Deputies nor Worthington are medical professionals, nor does Anderson make any allegation that any of these administrative Defendants were directly and personally involved in making medical decisions regarding Anderson's medical care. *See Estate of Young v. Martin*, 70 F. App'x 256, 260-61 (6th Cir. 2003) (plaintiff failed to establish warden's personal

26

involvement in inmate's medical care). To establish that non-medical personnel such as a warden or jailer was deliberately indifferent to an inmate's serious medical needs, the plaintiff must demonstrate that he or she intentionally prevented or interfered with a doctor's course of appropriate treatment, or directly or tacitly authorized the physician's clear mistreatment or neglect of an inmate, none of which is alleged here. *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004) ("If a prisoner is under the care of medical experts...a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). *See also Coleman v. Lappin*, No. 6: 10-CV-186-GFVT, 2011 WL 4591092, at *6-7 (E.D. Ky. 2011) (collecting cases). While Anderson may have hoped to go to King's Daughters for follow-up treatment, he does not allege any facts even suggesting that such treatment was ordered by medical providers, but jail officials intentionally interfered with these orders. In addition, to the extent that Anderson's claims are based on allegedly inadequate responses to Anderson's complaints and requests regarding his medical care, merely responding to a grievance is not a basis to impose liability. *Alder v. Corr. Medical Services*, 73 F. App'x 839, 841 (6th Cir. 2003) ("The denial of the grievance is not the same as the denial of a request to receive medical care.").

For all of these reasons, the Court finds that Anderson's allegations against these prison administration officials are insufficient to state constitutional claims against them related to his medical care. At most, Anderson alleges that, although

he complained to these individuals regarding the care that Anderson wanted to receive (another Motrin from Doe Deputies 1 and 2 and a follow-up trip to the hospital to Shannon Worthington), his requests were ignored. However, particularly with respect to administrative staff, such allegations are insufficient to establish personal involvement with respect to Anderson's claims of deliberate indifference to his serious medical needs.

In summary, after conducting a preliminary review of Anderson's complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, the Court finds that Anderson's allegations against BCDC Deputy Muex (also referred to as "Hightower") in Muex's individual capacity are sufficient to require a response from Muex with respect to Anderson's Eighth Amendment claim against him before this claim may be adjudicated further. Anderson's remaining claims, including all of his claims made against the Defendants in their official capacities, will be dismissed. All Defendants except for Defendant Muex will be dismissed from this action. Because Anderson is proceeding *in forma pauperis*, the United States Marshals Service ("USMS") will serve the summons and complaint on Anderson's behalf. Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d).

Accordingly, **IT IS HEREBY ORDERED** as follows:

1.    Anderson's Eighth Amendment claims made against Defendant BCDC Deputy Richard Muex (also known as "Hightower") made in his

Complaint [D.E. No. 1] **REMAIN PENDING** and will be served in accordance with the instructions below.

2.  The remainder of Anderson's complaint [D.E. No. 1], including all claims made against Defendants in their official capacities, is **DISMISSED WITHOUT PREJUDICE**.

3.  The following are **DISMISSED** as Defendants: all Defendants in their official capacities; Michael Worthington (Greenup County Jailer); Shannon Worthington (Greenup County Jail Administrator); Joe Burchett (Boyd County Jailer); S. Palmer (GCDC Deputy); BCDC Deputies Chandler, Layne, and Ritchie; John Does BCDC Deputies 1-10; and Doe Boyd County Nurses 1-2.

4.  The Ashland Deputy Clerk shall prepare a "Service Packet" for service upon Defendant BCDC Deputy Richard Muex (also known as "Hightower"). The Service Packet shall include:

    a.  a completed summons form;

    b.  the complaint [D.E. No. 1];

    c.  the Order granting Anderson *in forma pauperis* status [D.E. No. 13];

    d.  the Order re-instating this case [D.E. No. 20]

    e.  this Order; and

    f.  a completed USM Form 285.

5. The Ashland Deputy Clerk shall send the Service Packet to the USMS in Lexington, Kentucky and note the date of delivery in the docket.

6. The USMS shall personally serve the Service Packet upon Defendant BCDC Deputy Richard Muex (also known as "Hightower") at the Boyd County Detention Center, 209 28th Street, Catlettsburg, Kentucky 41129.

7. Anderson must immediately advise the Clerk's Office of any change in his current mailing address. **Failure to do so may result in dismissal of this case**.

8. If Anderson wishes to seek relief from the Court, he must do so by filing a formal motion sent to the Clerk's Office. Every motion Anderson files must include a written certification that he has mailed a copy of it to the Defendants or their counsel and state the date of mailing. **The Court will disregard letters sent to the judge's chambers or motions lacking a certificate of service.**

This ___ day of February, 2020.



**Signed By:**
**_Henry R. Wilhoit, Jr._**
**United States District Judge**